IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J. RICHARD PETERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:13-263 |
| ) | |
| THE HARFORD MUTUAL ) | JUDGE KIM R. GIBSON |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

The instant action concerns an insurance coverage dispute arising out of an automobile accident involving an owner of a corporate entity insured under a commercial lines policy. The matter is presently before the Court on cross-motions for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c). (ECF Nos. 7-8). For the reasons that follow, the Plaintiff's motion will be denied, and the Defendant's motion will be granted.

### II. BACKGROUND

Plaintiff J. Richard Peterman ("Peterman") resides in Curwensville, Pennsylvania. (ECF No. 1-2 at 4, ¶ 1). Defendant Harford Mutual Insurance Company ("Harford") is a Maryland corporation maintaining its principal place of business in Bel Air, Maryland. (*Id.* at 4, ¶ 2). LPL Land, Inc. ("LPL Land"), is a Pennsylvania corporation based in Curwensville. (*Id.* at 4, ¶ 3). At all times relevant to this case, Peterman owned fifty percent of LPL Land's issued and outstanding shares of common stock. (*Id.* at 5, ¶ 4). He also served as LPL Land's secretary and treasurer. (*Id.* at 5, ¶ 5).

LPL Land purchased a commercial lines automobile insurance policy issued by Harford. (ECF No. 7-2 at 7-70). The applicable policy period commenced on August 22, 2011, and ended on August 22, 2012. (*Id.* at 7-9). LPL Land was listed as the policy's "Named Insured." (*Id.* at 8, 18, 20). The coverage provided under the policy included underinsured motorist coverage.[1] (*Id.* at 48-51).

On February 19, 2012, Peterman was severely injured in an automobile accident while traveling as a passenger in a motor vehicle owned and operated by his nephew, Michael Peterman ("Michael"). (ECF No. 8-1 at 70). As a result of his injuries, Peterman suffered a loss of hearing in his right ear and a loss of vision in his left eye. (ECF No. 1-3 at 67). His lung capacity was impaired. (*Id.*). Because of a soft tissue injury to his cervical spine, Peterman experienced numbness and tingling in his left arm. (*Id.* at 68). He was also afflicted with headaches and peripheral numbness in his right leg. (*Id.* at 67-68).

Michael's vehicle was insured by Erie Insurance Company ("Erie"). (ECF No. 7 at 2, ¶ 7; ECF No. 8-1 at 70). Peterman was covered under a personal automobile insurance policy issued by State Farm Insurance ("State Farm"). (ECF No. 7 at 2, ¶ 8; ECF No. 8 at 11, ¶ 46). The coverage available under those policies was apparently inadequate to compensate Peterman for his injuries.[2] Peterman asserted a claim for underinsured motorist coverage under the Harford policy. (ECF No. 1-2 at 5-6, ¶ 11). Harford denied coverage on the ground that Peterman had not been "insured" under the commercial lines policy issued to LPL Land while

---

[1] Underinsured motorist coverage "provide[s] protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 PA. CONS. STAT. § 1731(c).

[2] The policies issued by Erie and State Farm are not included in the record. The documentary record suggests that Peterman was able to obtain $100,000.00 under the Erie policy. (ECF No. 1-3 at 67-68). It is not clear whether that coverage was supplemented with coverage under the State Farm policy. Peterman's medical expenses were evidently paid pursuant to a health insurance policy issued by Highmark Blue Shield ("Highmark"). In a letter to Peterman's attorney dated August 15, 2012, counsel for Highmark advised that Highmark had a subrogation interest in any recovery later procured by Peterman in connection with the automobile accident. (ECF No. 1-3 at 69-70).

2

riding in Michael's vehicle. (ECF No. 8-1 at 70-71). Robin Raymond, an employee of Harford's Claims Department, informed Peterman's attorney of the denial in a letter dated October 3, 2012. (*Id.*).

Peterman commenced this action in the Court of Common Pleas of Clearfield County on October 31, 2013, seeking a declaration that he was entitled to underinsured motorist coverage under the commercial lines policy issued by Harford. (ECF No. 1-2 at 2-6). On November 20, 2013, Harford removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (ECF No. 1). Harford answered Peterman's complaint on December 9, 2013. (ECF No. 3). During a telephonic scheduling conference conducted on January 15, 2014, the parties advised that Peterman's coverage under the policy was the only issue that needed to be resolved. (ECF No. 5). They agreed that no further discovery was necessary. (*Id.*). Harford and Peterman respectively moved for judgment on the pleadings on January 23, 2014, and January 31, 2014. (ECF Nos. 7 & 8). Those motions are currently ripe for disposition and will be resolved in this memorandum opinion.

### III. STANDARD OF REVIEW

"The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Zion v. Nassan*, 283 F.R.D. 247, 254 (W.D.Pa. 2012). Either motion may be used to seek the dismissal of a complaint based on a plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6), (h)(2)(B). The only difference between the two motions is that a Rule 12(b) motion must be made before a "responsive pleading" is filed, whereas a Rule 12(c) motion can be made "[a]fter the pleadings are closed." FED. R. CIV. P. 12(b), (c). A court presented with a

3

motion for judgment on the pleadings must consider the plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings. *Perelman v. Perelman*, 919 F.Supp.2d 512, 521 (E.D.Pa. 2013).

## IV. JURISDICTION AND VENUE

The commercial lines policy issued by Harford provides underinsured motorist coverage in the amount of $500,000.00. (ECF No. 7-2 at 20). Because this case involves "[c]itizens of different States" who dispute the availability of insurance coverage exceeding the value of $75,000.00,[3] the Court's exercise of subject-matter jurisdiction is predicated on 28 U.S.C. § 1332(a)(1). Venue is proper under 28 U.S.C. § 1391(b)(2).

## V. DISCUSSION

A federal court sitting in diversity must apply the choice-of-law rules of the State in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496-497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Pennsylvania's choice-of-law rules, an insurance contract is governed by the law of the State in which it is contracted and delivered. *McMillan v. State Mutual Life Assurance Co. of America*, 922 F.2d 1073, 1074-1075 (3d Cir. 1990); *Crawford v. Manhattan Life Insurance Co. of New York*, 221 A.2d 877, 880 (Pa.Super.Ct. 1966). Given that LPL Land is a Pennsylvania corporation, the commercial lines policy issued by Harford was most likely delivered in Pennsylvania. In any event, both parties rely on Pennsylvania law in support of their respective positions. (ECF No. 7 at 14-19; ECF No. 8 at 18-25; ECF No. 10 at 1-6). Since neither party appears to question the application of Pennsylvania

---

[3] Since Peterman seeks only declaratory relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Correspondent Services Corp. v. First Equities Corp. of Florida*, 442 F.3d 767, 769 (2d Cir. 2006).

4

law to this case, the Court will analyze the disputed substantive issues in accordance with the law of Pennsylvania. *Smith v. Allstate Insurance Co.*, 904 F.Supp.2d 515, 518, n. 1 (W.D.Pa. 2012).

Peterman brought this action against Harford in the Court of Common Pleas pursuant to Pennsylvania's Declaratory Judgments Act [42 PA. CONS. STAT. § 7531 *et seq.*]. (ECF No. 1-2 at 2-6). Given that the case has been removed to this Court, the availability of declaratory relief is governed by the federal Declaratory Judgment Act ("DJA") [28 U.S.C. § 2201 *et seq.*]. *Reifer v. Westport Insurance Corp.*, 751 F.3d 129, 132-137 (3d Cir. 2014); *Delaware St. University Student Housing Foundation v. Ambling Management Co.*, 556 F.Supp.2d 367, 373, n. 49 (D.Del. 2008). Since an "actual controversy" exists between the parties, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaration made pursuant to the DJA has "the force and effect of a final judgment or decree." *Id.* Such a declaratory judgment may serve as a predicate for "[f]urther necessary or proper relief." 28 U.S.C. § 2202.

Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") [75 PA. CONS. STAT. § 1701 *et seq.*] defines the term "[u]nderinsured motor vehicle" as "[a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 PA. CONS. STAT. § 1702. The record indicates that the coverage available under the Erie policy was insufficient to compensate Peterman for his injuries. (ECF No. 1-3 at 67-68). Consequently, Michael's vehicle constituted an "underinsured motor vehicle" within the meaning of the MVFRL. "Underinsured motorist coverage" exists to protect individuals who find themselves in Peterman's predicament. 75 PA. CONS. STAT. § 1731(c). The central question in this case is whether Peterman's status as an owner and officer of LPL Land entitles him to underinsured motorist coverage under the Harford policy.

5

In *Utica Mutual Insurance Co. v. Contrisciane*, 473 A.2d 1005, 1010 (Pa. 1984), the Pennsylvania Supreme Court recognized that most "uninsured"[4] and underinsured motorist policies provided coverage to persons falling within three different classifications. "Class-one" coverage generally protects a discrete category of individuals who are intended beneficiaries of an insurance contract and parties to a contractual relationship with an insurer. *Employers Mutual Casualty Co. v. Loos*, 476 F.Supp.2d 478, 486 (W.D.Pa. 2007)(explaining that class-one insureds typically include the named insured, his or her spouse, and any other relatives living within the same household). "Class-two" coverage typically extends to individuals who happen to be occupying an insured vehicle at the time of an automobile accident. *Id.* "Class-three" coverage provides protection to those who are entitled to recover damages attributable to bodily injuries suffered by individuals falling within the first and second categories. *Id.* Unlike class-one insureds, individuals falling within the second and third categories usually secure coverage through happenstance rather than through the payment of premiums to an insurer. *Utica*, 473 A.2d at 1010-1011. Since class-one insureds are ordinarily in contractual privity with the insurer, they tend to be "finite and readily discernible in number." *Ober v. Aetna Casualty & Surety Co.*, 766 F.Supp. 342, 349 (W.D.Pa. 1991).

The commercial lines policy issued by Harford listed only LPL Land as a "named insured." (ECF No. 7-2 at 8, 18, 20). Because *Utica* concerned only class-two coverage, the Pennsylvania Supreme Court declined to consider whether the owners and officers of the corporation appearing as the "named insured" qualified as class-one insureds under the insurance policy disputed in that case. *Utica*, 473 A.2d 1010, n. 4. In this case, Peterman argues that he is entitled to class-one coverage under the Harford policy. (ECF No. 8 at 20-21). Harford

---

[4] Uninsured motorist coverage "provide[s] protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles." 75 PA. CONS. STAT. § 1731(b).

6

maintains that Peterman was not insured under the policy while traveling in Michael's vehicle, since that vehicle was not owned by LPL Land or otherwise within the ambit of the policy's class-two coverage. (ECF No. 7 at 14-17; ECF No. 10 at 1-3).

The proper interpretation of an insurance contract presents a question of law that should be decided by a court. *Minnesota Fire & Casualty Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004). A court presented with such a question must "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *Donegal Mutual Insurance Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007). Policy language that is clear and unambiguous must be given effect. *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, 908 A.2d 888, 897 (Pa. 2006). Since insurance contracts are typically contracts of adhesion drafted by insurers, ambiguous policy provisions must be construed in favor of coverage. *Prudential Property & Casualty Insurance Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986). When the applicable policy language is clear, a court cannot "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Construction Co. v. Harleysville Mutual Insurance Co.*, 735 A.2d 100, 106 (Pa. 1999).

In light of the foregoing principles, the question of coverage in this case can only be considered by reference to the language of the commercial lines policy. The portion of the policy providing underinsured motorist coverage contains the following language:

> **A. Coverage**
> 1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these

7

damages must result from the ownership, maintenance or use of an "underinsured motor vehicle".

\*\*\*

**B. Who Is An Insured**
If the Named Insured is designated in the Declarations as:
1. An individual, then the following are "insureds":
    a. The Named Insured and any "family members".
    b. Anyone else "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
    c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
    a. Anyone "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
    b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

(ECF No. 7-2 at 48-49). The language of the policy plainly distinguishes between individual and corporate "insureds," providing class-one coverage only to a named "individual" and the members of his or her family. (*Id.*). When the "named insured" is a corporation, the policy provides only class-two and class-three coverage. (*Id.*). At the time of his accident, Peterman was not listed as a "named insured" under the Harford policy. (ECF No. 7-2 at 8, 18, 20). The policy was issued solely to LPL Land. (*Id.*). Because the applicable language clearly and unambiguously provides class-one coverage *only* when the "named insured" is an "individual," Peterman does not qualify as a class-one "insured" under the policy.[5] *United States Fidelity & Guaranty Co. v. Tierney Associates, Inc.*, 213 F.Supp.2d 468, 476-478 (M.D.Pa. 2002).

---

[5] Peterman relies on *Ober v. Aetna Casualty & Surety Co.*, 766 F.Supp. 342, 349 (W.D.Pa. 1991), for the general proposition that the officers and directors of a corporation are class-one insureds under policies issued directly to the corporation. (ECF No. 8 at 20-21). That case involved the interpretation of *ambiguous* policy language that included the plaintiff within the category of "insured" persons even though he was not the "named insured" under

8

The line describing the scope of LDL Land's underinsured motorist coverage under the Harland policy includes the digit "7" under the "covered autos" heading. (ECF No. 7-2 at 20). The portion of the policy defining the "business auto coverage form" provides that coverage appearing next to the digit "7" extends only to "autos" listed in "Item Three of the Declarations." (*Id.* at 31). "Item Three" lists only a "2008 GMC light duty" vehicle owned by LDL Land. (*Id.* at 21). Peterman acknowledges that he was not riding in that vehicle at the time of the accident. (ECF No. 1-2 at 5, ¶ 9). Since Peterman was injured while "occupying" Michael's vehicle (rather than a "covered" vehicle), he does not qualify as a class-two "insured" under the commercial lines policy. *Northern Insurance Co. of New York v. Resinski*, 827 A.2d 1240, 1244 (Pa.Super.Ct. 2003). Furthermore, Peterman seeks compensation only for his own injuries. (ECF No. 1-2 at 5-6, ¶¶ 10-13). Consequently, the policy language providing class-three coverage is plainly inapplicable to this case. (ECF No. 7-2 at 49).

Although the law of contracts generally leaves contracting parties free to define the scope of their respective rights and obligations, it does not provide them with a license to displace specific mandates imposed by statutory provisions governing the terms of their relationship. *Miller v. Allstate Insurance Co.*, 763 A.2d 401, 404-405 (Pa.Super.Ct. 2000). A court cannot give effect to contractual provisions which conflict with statutory mandates. *Kmonk-Sullivan v. State Farm Mutual Automobile Insurance Co.*, 746 A.2d 1118, 1121 (Pa.Super.Ct. 1999). In an attempt to circumvent the language of the Harford policy, Peterman suggests that the MVFRL somehow entitles him to underinsured motorist coverage under the present circumstances. (ECF No. 8 at 24-25).

---

the policy in dispute. *Ober v. Aetna Casualty & Surety Co.*, 766 F.Supp. 342, 345 (W.D.Pa. 1990). Since the Harford policy clearly and unambiguously distinguishes between individual and corporate "insureds," it does not provide class-one coverage to individuals in Peterman's situation. *State Farm Insurance Co. v. Taylor*, 293 F.Supp.2d 530, 532-533 (E.D.Pa. 2003).

9

The MVFRL requires insurers seeking to insure vehicles "registered or principally garaged" in Pennsylvania to offer both uninsured and underinsured motorist coverage as a part of their proposed insurance contracts. 75 PA. CONS. STAT. § 1731(a). The "named insured" has the option to either purchase or reject such coverage. 75 PA. CONS. STAT. § 1731(a), (b), (c). The MVFRL defines the term "[i]nsured" as follows:

> **"Insured."** Any of the following:
> (1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.
> (2) If residing in the household of the named insured:
>     (i) a spouse or other relative of the named insured; or
>     (ii) a minor in the custody of either the named insured or relative of the named insured.

75 PA. CONS. STAT. § 1702. In *Prudential Property & Casualty Insurance Co. v. Colbert*, 813 A.2d 747, 749-751 (Pa. 2002), the Pennsylvania Supreme Court held that since the MVFRL defined the term "insured" broadly enough to include minors living with their "insured" custodial parents, an insurer could not deny underinsured motorist coverage to the resident son of its "named insureds" merely because he had been driving a vehicle that was not insured under his parents' insurance policy at the time of his injury. The holding in *Prudential Property*, however, provides no solace to Peterman. The statutory definition "is applicable only where the named insured is an individual person." *Employers Mutual Casualty Co.*, 476 F.Supp.2d at 485. Where the "named insured" is a corporation, the MVFRL's statutory definition does not displace policy definitions limiting the category of "insureds" to those operating covered vehicles. *Insurance Co. of Evanston v. Bowers*, 758 A.2d 213, 217-218 (Pa.Super.Ct. 2000); *Caron v. Reliance Insurance Co.*, 703 A.2d 63, 67-69 (Pa.Super.Ct. 1997).

Peterman calls the Court's attention to the provisions of the MVFRL relating to the issue of priority in circumstances where multiple insurance policies are implicated. (ECF No. 8 at 24-25). He relies on 75 PA. CONS. STAT. § 1733, which provides:

> **§ 1733. Priority of recovery**
> **(a) General rule.**—Where multiple policies apply, payment shall be made in the following order of priority:
> (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
> (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.
> **(b) Multiple sources of equal priority.**—The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

75 PA. CONS. STAT. § 1733. Peterman suggests that since he has already recovered the maximum amount of compensation available under the Erie policy, he is statutorily entitled to underinsured motorist coverage under the Harford policy. (ECF No. 8 at 25). His position is refuted by the plain language of § 1733(a)(2), which makes reference to "[a] policy covering a motor vehicle not involved in the accident with respect to which *the injured person is an insured.*" 75 PA. CONS. STAT. § 1733(a)(2)(emphasis added). Since Peterman is not an "insured" under the commercial lines policy issued to LPL Land, the MVFRL does not provide him with a statutory right to underinsured motorist coverage under that policy. *Hunyady v. Aetna Life & Casualty*, 578 A.2d 1312, 1313-1314 (Pa.Super.Ct. 1990). Moreover, the statutory text invoked by Peterman comes into play only "[w]here multiple policies apply." 75 PA. CONS. STAT. § 1733(a). Given that Peterman's injuries are not covered under the Harford policy, that policy does not "apply" within the meaning of the MVFRL. The provisions of the MVFRL governing priority of coverage among triggered insurance policies do not independently broaden

the coverage available under those policies or trigger policies under which coverage is not available. *Prudential Property*, 813 A.2d at 751, n. 3; *Burstein v. Prudential Property & Casualty Insurance Co.*, 809 A.2d 204, 209, n. 7 (Pa. 2002).

Since one of the primary purposes of the MVFRL would be thwarted if an insurer could deny benefits for which premiums have been paid, policy language which essentially renders coverage illusory cannot be enforced. *Heller v. Pennsylvania League of Cities & Municipalities*, 32 A.3d 1213, 1225 (Pa. 2011). Peterman points out that since a corporation cannot sustain any of the "bodily injuries" covered under the Harford policy, it would be impossible for LPL Land to make a claim for class-one underinsured motorist coverage. (ECF No. 8 at 21). It is true that, where the "named insured" is a corporation, the policy does not provide class-one underinsured motorist coverage. That is precisely why the policy's definition of the term "insured" distinguishes between "individuals" and corporate "organizations." (ECF No. 7-2 at 44-45). The unavailability of class-one coverage, however, does not render the underinsured motorist coverage illusory. If Peterman had been "occupying" a covered motor vehicle at the time of his accident, he would have been entitled to class-two coverage. (ECF No. 7-2 at 45). In *Insurance Co. of Evanston v. Bowers*, 758 A.2d 213, 217 (Pa.Super.Ct. 2000), the Pennsylvania Superior Court declared that Pennsylvania law did not require every underinsured motorist policy to offer or provide every class of coverage.[6] The United States District Court for the Middle District of Pennsylvania reached the same conclusion in *United States Fidelity & Guaranty Co. v. Tierney Associates, Inc.*, 213 F.Supp.2d 468, 474-477 (M.D.Pa. 2002). Although a portion of LPL Land's premium payment was attributed to underinsured motorist coverage, it was not tied to a designated class of coverage or divided among different classes. (ECF No. 7-2 at 20-21).

---

[6] "Federal courts presented with questions of state law must accord substantial weight to decisions rendered by the intermediate appellate courts of the relevant State." *Brown v. Tucci*, 960 F.Supp.2d 544, 570, n. 8 (W.D.Pa. 2013).

12

Pennsylvania law does not prohibit an insurer from limiting underinsured motorist coverage on corporate-owned vehicles to individuals who are injured while "occupying" those vehicles.[7] *State Farm Insurance Co. v. Taylor*, 116 Fed.Appx. 350, 352 (3d Cir. 2004)(unpublished). The coverage provided to LPL Land under the commercial lines policy cannot be fairly characterized as "illusory" simply because it is not available to Peterman under the particular facts of this case. *TIG Insurance Co. v. Tyco International, Ltd.*, 919 F.Supp.2d 439, 465-467 (M.D.Pa. 2013).

## VI. CONCLUSION

For the foregoing reasons, Peterman was not "insured" under the commercial lines policy issued to LPL Land at the time of his accident. (ECF No. 7-2 at 48-49). Since Peterman was not "insured" under the policy, the MVFRL does not provide him with a statutory right to the underinsured motorist coverage that he seeks.[8] *Caron*, 703 A.2d at 67-69; *Hunyady*, 578 A.2d at 1314. Peterman's motion for judgment on the pleadings (*ECF No. 8*) will be denied. Harford's motion for judgment on the pleadings (*ECF No. 7*) will be granted. An appropriate order follows.

---

[7] The plaintiff in *Ober v. Aetna Casualty & Surety Co.*, 766 F.Supp. 342, 343 (W.D.Pa. 1990), was the president of a corporation that had paid separate premiums to insure two vehicles that were available for his personal use. He sought coverage for injuries that he had suffered while operating one of those vehicles. *Ober*, 766 F.Supp. at 343. Given that the facts of this case are clearly distinguishable from those presented in *Ober*, Peterman's reliance on that decision is misplaced. (ECF No. 8 at 20-21).

[8] In light of this determination, the Court has no occasion to consider Harford's alternative argument concerning LPL Land's alleged waiver of its statutory right to purchase "stacked" underinsured motorist coverage. (ECF No. 7 at 17-19; ECF No. 10 at 4-6). Notwithstanding the inconsequential nature of that issue, it is worth noting that LPL Land appears to have executed such a waiver in conformity with the procedure described in the MVFRL. (ECF No. 3 at 2-3, ¶ 11; ECF No. 3-1 at 66-68); 75 PA. CONS. STAT. § 1738(d)(2). In the portion of his brief discussing the issue of "stacking," Peterman does not acknowledge or discuss the documentary evidence which suggests that a waiver was executed. (ECF No. 8 at 21-23). It is not clear whether Peterman questions the authenticity of the documents submitted with Harland's answer, or whether he has simply overlooked them. (ECF No. 3-1 at 66-68).

13

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| J. RICHARD PETERMAN, | ) | CIVIL ACTION NO. 3:13-263 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| THE HARFORD MUTUAL INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

**ORDER**

**AND NOW**, this **22nd** day of August 2014, upon consideration of the parties' cross-motions for judgment on the pleadings, and in accordance with the foregoing memorandum opinion,

**IT IS HEREBY ORDERED** that Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **DENIED**;

**IT IS FURTHER ORDERED** that the Defendant's motion for judgment on the pleadings (ECF No. 7) is **GRANTED**;

**IT IS FINALLY ORDERED** that the Clerk of Court shall mark this case closed.

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**